That brings us to our sixth case of the morning, Mason v. Cook County, Illinois, appeal number 252743. And we will welcome Mr. Levine to the podium once everyone is settled. Good morning. I please the court, counsel. Thank you very much for taking this up today. What I'd like to focus on is the reasonable accommodation analysis and specifically the question of undue burden. And two things about it that I'd like to talk about first in the abstract, and then we'll plug it into the facts here. The first thing is that the undue burden analysis is defendant's burden. In other words, once the prima facie case has been made, it took me almost a decade to learn how to say prima facie correctly. But once the prima facie case is made, then the question shifts to the defendant to demonstrate that there was no reasonable accommodation, because any accommodation would have been an undue burden. That's the first thing. And then the second thing is that that analysis is context specific. And what I mean by context specific is that it's not just a given industry or a given position, but it's the specific employer and the specific position that that employee is in. And so therefore, for example, hypothetically, in this case dealing with COVID vaccination, if there was an employer, whether it's a hospital or an airline, CTA, anything, if there's an employer which announces a policy that everyone has to be vaccinated in order to be on site, but then makes a specific exception for anybody who's undergoing a double blind study on vaccine efficacy, I think it's fairly clear that in that circumstance, based upon the context of that employer, that that double blind, that allowing someone to engage in a double blind study of vaccine efficacy and therefore potentially not being vaccinated, that that would deal with the defendant's burden. The defendant would not be able to carry the burden of demonstrating that a person with a religious request for accommodation couldn't be accommodated because it's an undue burden. In this case, that is essentially what took place. That's not facially what took place, but what took place is that Brooke Mason applied for a reasonable accommodation from the vaccine requirement. And what the county stated was that they have a policy, it's a very simple policy. No one is allowed to work here unless they are vaccinated. They could be off site, but if you're on site, you absolutely 100% must be vaccinated and there are no exceptions to that policy whatsoever. And it turns out that there is an exception to that policy. And the exception to that policy is if someone is participating in a double blind study of vaccine efficacy. A couple of things about the employee who is participating in the double blind study of vaccine efficacy. One thing is that it turns out after the the double blind was, I don't know how you say it, but after they lifted the curtain, it turns out that this person received the placebo. In other words, this employee was not vaccinated against COVID at all. And also I do understand, Mr. Lubin. Yeah. Why you are pointing to Sanitarium One. How can this proposed comparator be similarly situated when they didn't work at the same hospital and even in a comparable setting? That's what I'm struggling with. So it goes to, you know, the question isn't similarly situated in the sense of the McDonnell Douglas analysis. The question is whether the policy allowed any allowed any leeway to the left or to the right. In this case, the county says there's no leeway whatsoever. You have to be vaccinated in order to work here. And we see that that's not true. Now, as to the question, how is this person similarly situated? What was this person's job duties? Did this person work in a room with other people? Was this person exposed to members of the public? All of that stuff was the defendant's burden to to bring in. Defendant could have come in and said, look, this person worked on site, but she worked in a closet moving around boxes. And since she worked in a closet moving around boxes and she had to check in at a computer, she never saw another human being. Well, on the job, that's a question about that. It is the defendant's burden insofar as we're talking about proving undue hardship as part of the reasonable accommodations theory that you're pursuing. I'm wondering if you're also still pursuing your disparate treatment theory, where I think sanitarian one is also potentially relevant. Right. But where it is, the burden switches and it's on you. And and so it's a sort of different analysis there. In terms of disparate treatment, it clearly is true that the burden would be on me to demonstrate that this person is a similarly situated employee. And the lack of any evidence about what this person actually did with their job makes it hard for me to do that. That's true. When it comes to the to the analysis of whether there was an undue burden, though, the burden is on the defendant. So I think that's probably a, you know, it's a good point. Right. I may lose on disparate impact. And certainly if I don't win on undue burden, I lose on disparate impact. That's clear. But for the very same reason that I'm going to have a hard time demonstrating disparate impact, they're going to have a hard time demonstrating undue burden. OK, I'm just going to nail you down here a little bit, though. Sure. Are you still I mean, the district court decision here considered both reasonable accommodations and disparate treatment? Yes. Are you appealing both of those or are you just appealing the first one? I am. But 90 percent of my brief was on undue burden. Well, not on undue burden, on reasonable accommodation. I think I dedicated about a page. Yeah, that's what I'm asking. Yeah. Right. So anyway, getting back to I see my time. So getting back to the question, then it was defendant's burden to demonstrate all of those things. Right. And so they could have said all those things where the person worked, what type of people that this person came in contact with. This person came into contact with no people. And we don't know any of that. The sum in total of what we know about this person is not their name, their title, sanitarian one, and the fact that they didn't work at Stroger because they worked in the suburbs. People live in the suburbs, too. There are hospitals in the suburbs. There are human beings that walk around in the suburbs, a job in the suburbs. Even if it's an office job, it means that you're there with potentially other people. Mr. Lippitt, another question for you. These cases have started coming up more and more to the courts of appeals, and we have a handful of other courts of appeals that have considered district court decisions, granting summary judgment to employer defendants in sort of generally this category of cases. Are there any courts of appeals cases that have done what you're asking us to do here? The simple answer is no. In most of the other, I spent most of yesterday looking over to find if there are any cases that I could walk in and say, hey, guess what? This one went my way, so you should go my way, too. I didn't find that. In most of the cases that have been decided recently, I think there's one out of the Ninth Circuit very recently. The argument was basically that my argument on reply, which is, well, the employee's just going back to do exactly what she was doing yesterday. What's the problem? Which I think is a compelling argument, but apparently the courts don't. What is missing from every single one that I looked at was that other piece, which is that the employer actually did grant an accommodation to somebody else. And the only difference was that person wasn't basing their accommodation on a religious request. And I see that I'm beyond the amount of time that I wanted to leave for rebuttal. So unless there are other questions, I'm going to go sit down over there. Thank you very much, Your Honor. All right, we'll see you again, Mr. Lubin. All right, please welcome to the podium Ms. Orri. May it please the Court. The undisputed evidence established that it would be an undue hardship for Cook County Health to exempt plaintiff, a pharmacist at Stroger Hospital, from the COVID-19 vaccination policy. This Court should affirm the District Court's judgment because no reasonable jury could find in favor of plaintiff. COVID-19 fundamentally changed the lives of most Americans beginning in mid-March 2020. But for hospital systems like Cook County Health, COVID had an even greater impact. Cook County Health, or CCH, is a division of Cook County and it is a hospital system with about 5,900 employees. As a healthcare provider, CCH has a responsibility to provide the safest care possible for patients. By 2022, CCH had administered over 300,000 COVID-19 tests and cared for more than 2,000 hospitalized COVID-19 patients. Plaintiff admits that throughout the pandemic, healthcare workers like the plaintiff were at a greater risk than the general public of contracting COVID-19, either through exposure to coworkers or to other patients. It's undisputed that an increase in COVID-19 cases put a strain on hospitals like John Sturger Hospital. And plaintiff concedes that healthcare workers were at an increased risk of infecting patients, including medically vulnerable patients. So CCH was doing what it could before vaccines were available. There was masking, there was social distancing, but these half measures are not as effective as vaccines. And plaintiff concedes that vaccination afforded employees additional protections from severe illness. So in 2022, after the FDA approved these vaccines, CCH implemented its vaccination policy. Ms. Orey, let me ask you some questions about the record in this case. I mean, the record in this case is very thin. You know, CCH put in three affidavits, that's it. I mean, you basically just, right now, summarized everything that's in there. And that really is in pretty stark contrast to some of the other cases where this has come up in the courts of appeals. Like, if you look at the Ninth Circuit case, there's extensive expert testimony. There's looking at contracts that the defendant employer would have breached had the employee not been vaccinated. There's a sort of very long record. And that's particularly significant because the burden is on the hospital, at summary judgment, to put forth the evidence that's needed to prove undue hardship. I'm not sure I've seen any court of appeals case considering a record this thin on the part of the hospital. I think facts matter. And here, it's undisputed that plaintiff, as a pharmacist, had to work in person, in a room with 60 other people, counseling patients coming to the patient window, delivering vaccinations or medicine to the floor, treating COVID-19 patients. So I think the facts of this case, working in a hospital system, in a hospital, make it so that there is an undue hardship that Cook County was able to establish. What do we know about this other employee? Sanitarian One. That's kind of such an interesting name. What do we know about that person? So the record is not very verbose on the Sanitarian One. What we know from the record was that this employee works at the Illinois Department of Public Health, not at the hospital, and the Sanitarian One did not seek an accommodation. What it appears is, out of 5,900 employees, as Human Resources was gathering information about vaccination records, like many employers did, it came to light that the Sanitarian One had not submitted the COVID-19 vaccination, proof of vaccination. So that's how it came to light. There was no accommodation request. And so the Department of the Employee Health Services prescribes a policy if you were seeking an accommodation, you had to submit a request to Employee Health Services. So that way it was the same group of people reviewing the accommodation request. The Sanitarian One did not seek an accommodation. It's not worse though, right? I mean, like Ms. Mason self-identified as not having had the vaccine and brought it to her employer's attention, whereas Sanitarian One just didn't get the vaccine and didn't tell anyone. I'm not sure that that helps the county with its argument. Sorry, go ahead. I think if you look at the whole record, there were email communications where it comes to light that the Sanitarian One exists and they say, oh, well, she couldn't have sought an accommodation. You know, so it was back and forth with the Sanitarian then. So I think it's more similar to the Klotzier versus Costco case. You know, 5,900 employees, the fact that one person gets by for a little bit doesn't show that it was granting an accommodation. It was just getting the paperwork down. So basically, that person just fell through the cracks. Fell through the cracks, yes. But eventually it was identified. I mean, just to make sure I understand, I see what you're saying about them falling through the cracks, but they didn't fall all the way through the cracks, right? Because what the emails show is that there was a pretty long period of time in which the employer at least knew that Sanitarian One may not be vaccinated because it was a blinded study. So, you know, they knew that it was a question mark. And Sanitarian One still continued to work. There's no suggestion that that person had a remote job. And that lasted for, I guess, how long? You tell me, a year-ish? I would say less than a year. Less than a year. And then there was a period of several months where it became clear that Sanitarian One was actually not vaccinated because she had gotten the placebo. And she eventually did get vaccinated, but in those several months, even when everyone knew she wasn't vaccinated, she did keep coming to work every day. Again, the record's not clear as to where she was working, whether she was working remotely or not. The case that the plaintiff cites in his reply, the Rock Island case, I think there was a Sanitarian One in that case. And it sounds like the Sanitarian One, again, the record is not clear as to exactly what the Sanitarian One was doing, but it's not a job that's necessarily in person all the time, whether you're being outside or not. The record's not clear. And I think while it is the hospital's burden to establish undue hardship, it would be the plaintiff's burden to show that there was a comparator that was treated better. And here, that's not the case. If we're under a disparate treatment claim, right? But under the reasonable accommodations claim, it's just your burden, right, to show undue hardship? But the Sanitarian One was not granted an accommodation. So after vaccinations were approved by the FDA, County Health implemented its policy. And it is undisputed that plaintiff, as a pharmacist working within Georgia Hospital, having to go, you know, do the elevators through the hospital to get to the pharmacy, working with 60 other people in the same room, pharmacists and pharmacy techs, working with patients if they had questions, she could not work remotely. Plaintiff does not dispute that. And CCH denied plaintiff's exemption request because allowing her to work unvaccinated in the hospital would oppose an undue hardship on CCH's business because she would oppose the threat to the health and safety of the patients and staff. Where in the record can we find CCH's comparison of essentially the situation with Mason being vaccinated and what it would look like for her if she had, you know, whatever other, you know, masking, distancing and weekly testing. Where do we find that comparison to see how big of a hardship that Delta would have been? I think we would find it through the affidavit of Dr. Walbaugh talking about how the social distancing and masks are not as effective as vaccines. But where, I mean, certainly I see that and it says, you know, vaccines are the best way of producing transmission and that's, I mean, we can I think take that as a given right here as of this date. But the whole premise of Title VII, right, is that employers don't get to just do what they think is the best thing. They have to make accommodations for their religious staff. Like in Groff, for example, you know, the employer understandably thought it was the best thing for everyone to work on a Sunday because they had to deliver on a Sunday. But the whole idea is, like, the statute says, too bad. So where in the record do we see something more than just an assertion that vaccination is the best thing but rather a quantification of how big the hardship would have been as comparing vaccination to masking, distancing, weekly testing? And Groff talks about how you have to look at this substantial increased cost in relation to the business. And here, CCH, the business, is healthcare. The mission statement, which is it's an agreed fact that the mission is to establish universal access to the world's best healthcare best care and health services for all Cook County residents, regardless of the ability to pay, so that all may live their healthiest lives. Absolutely. And in Groff, the mission was to deliver packages. So it's the perception. It's also the perception, you know, Cook County Health believes in access to safety and health. And so if you allow unvaccinated employees who are dealing with patients, perhaps and again, this goes to Dr. Walbaugh's idea that the impression that it's not safe to go to the hospital could be a concern for the hospital. And the vaccination reduced the severity of COVID, which helps for the hospital staffing purposes. You know, when you don't have enough staff, you have to get overtime. You have to find people who can come in. So it's both safety to the patients as well as having the ability, the workforce, to staff a hospital. So I'm out of time. Okay. I ask that you affirm the District Clerk's judgment. All right. Thank you. Mr. Lubin? Thank you very much. One thing I want to point out is that part of the defense argument is that Sanitary and One employee fell through the cracks. It's not correct. This employee was identified in a filing before the Northern District of Illinois in November of 2021. In November of 2021, the Mukasha case, which had to do with Cook County, it's on page 5 of my brief, I point that out, there was an affidavit filed with the Northern District of Illinois in which it identified all of the members of Cook County Health, whether they were vaccinated, didn't by name and didn't by title, but it referred to the fact that there was an employee, a single employee of Cook County Health, who was not vaccinated as a result of a secular request for an accommodation. And if I recall correctly, that's the way they worded it. In other words, they had a secular basis for getting an accommodation. In October of 2021, that employee emailed several figures within Cook County Health, that's also on page 5 of my brief, to explain to them that she was taking part in a double-blind study. And the response was, you should ask for an exemption. That was the response to the email. So there were figures in HR that were aware of this person as early as October of 2021. They're talking about her in filings before the Northern District of Illinois in November of 2021. They continue talking to her in July of 2022, basically asking when are you going to unblind the study? That's the word. When are you going to unblind the study in order to let us know whether you're vaccinated? For the next three months, she said it's coming any day now. And then didn't do it until, you know, well after my client had been terminated from her job. But in the period in which my client was terminated from her job, there already had passed six whole months during which Cook County Health was aware of the existence of the Sanitarian 1 employee who was not vaccinated. So it's simply not true that she slipped through the cracks. And all of that, of course, begs the question, why not more information? If it was the case that the Sanitarian 1 employee could do part of her job remotely, and I don't think anyone said that she could do all of her job remotely, but that she could do part of her job remotely, why wasn't that alleged? Since it's defendant's burden, the failure to allege that is really detrimental to defendant's case. Therefore, I submit that this matter should be returned to the district court with instructions to allow the matter to go forward for a trial. And I'm certainly happy to answer any questions. Excellent. Thank you all so much. Have a wonderful day. Thank you. You too. We thank the parties. We wish everyone a wonderful day. We'll take that case under advisement.